David Atlas (DA-0317)
Smith Dornan & Dehn PC
110 East 42nd Street
Suite 1303
New York, New York 10017
Tele:  212-370-5316
Fax:   212-370-5317
Attorneys for Defendant


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KENSINGTON PUBLISHING CORP.,                    :
                                                :
                        Plaintiff,              :        06 Civ. 4748 (JSR)
                                                :        ECF CASE
            v.                                  :
                                                :
HEATHER ARMSTRONG,                              :
                                                :
                        Defendant.              :
-------------------------------------------------------------X


MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………… 1

FACTS……………………………………………………………………… 1

ARGUMENT……………………………………………………………... 4

I.   THE COPYRIGHT ACT BARS PLAINTIFF'S CLAIMS……………… 5

   A.   Section 204(a) of the Copyright Act of 1976
        Bars Enforcement of the Alleged Oral Agreement………………. 5

   B.   Section 204(a) Also Bars Any Claims to Enforce an
        Oral License Based on Other Related Causes of Action…………. 10

II.   THE NEW YORK STATUTE OF FRAUDS
      BARS PLAINTIFF'S CLAIMS……………………………………… 11

III.   PLAINTIFF IS NOT ENTITLED TO SPECIFIC PERFORMANCE…….. 16

IV.   PLAINTIFF IS NOT ENTITLED TO ITS ATTORNEYS' FEES………... 18

V.   PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES………….. 19

CONCLUSION……………………………………………………………… 20

## TABLE OF AUTHORITIES

American Broadcasting Cos. v. Wolf, 52 N.Y.2d 394, 401-02
438 N.Y.S.2d 482, 420 N.E.2d 363 (1981)………………………………….. 17

Arias v. Solis, 754 F. Supp. 290, 293-94 (E.D.N.Y. 1991)…………………….. 17

Armored Motor Service, Inc. v. First Federal Sav. & Loan Asso.,
138 A.D.2d 954, 526 N.Y.S.2d 287 (4th Dep't 1988)………………………… 14

Arthur v. Oakes, 63 F. 310 (7th Cir. 1894)…………………………………… 17

Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339, 343
(2d Cir.), cert denied, 375 U.S. 879 (1963)………………………………… 15

Bethlehem Engineering Export Corp. v. Christie, 26 F. Supp. 121, 122
(D.N.Y. 1939) aff'd, 105 F.2d 933 (2d Cir. 1939)…………………………… 17

Bieg v. Hovnanian Enters., Inc., 157 F. Supp. 2d 475, 482-83
(E.D. Pa. 2001)……………………………………………………………... 7

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)………….. 4

Chapel v. Mitchell, 84 N.Y.2d 345, 618 N.Y.S.2d 626,
642 N.E.2d 1082 (1994)……………………………………………………… 18

Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48
(2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)…………………………… 4

Creator's Way Associated Labels, Inc. v. Mitchell (In re Mitchell),
249 B.R. 55, 59 (S.D.N.Y. Bankr. 2000)…………………………………….. 18

De Rivafinoli v Corsetti, 4 Paige Ch 264, 270………………………………… 17

Dorman v. Cohen, 66 A.D.2d 411, 414, 413 N.Y.S.2d 377 (1st Dep't 1979)... 14

Effects Associates, Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990),
cert denied, 498 U.S. 1103 (1991)…………………………………………… 6, 8

Forrest v. Unifund Fin. Group, 2005 U.S. Dist. LEXIS 9028
(S.D.N.Y. May 12, 2005)……………………………………………………. 19

Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 103 (S.D.N.Y. 1997)... 16

Frater v. Tigerpack Capital, 1998 U.S. Dist. LEXIS 19128 at *4
(S.D.N.Y. Dec. 8, 1998)……………………………………………… 18

Garrity v Lyle Stuart, Inc., 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831,
353 N.E.2d 793 (1976)…………………………………………….. 19

Ginsberg Machine Co. v. J&H Label Processing Corp., 341 F.2d 825, 827
(2d Cir. 1965)……………………………………………………… 11

Goldsmith v. Pyramid Communications, Inc., 362 F. Supp. 694
(S.D.N.Y. 1973)……………………………………………………. 17

Haight v Badgeley, 15 Barb 499……………………………………… 17

Hirschfeld v. I.C. Securities, Inc., 132 A.D.2d 332,
521 N.Y.S.2d 436 (1st Dep't 1987)………………………………… 18

Hooper Assocs. v. AGS Computers, Inc., 74 N.Y.2d 487, 491-92,
548 N.E.2d 903, 549 N.Y.S.2d 365 (1989)………………………… 18

In re Estate of Perera, 3 Misc. 2d 1043, 1046, 155 N.Y.S.2d 894 (1956),
aff'd 5 A.D.2d 972, 173 N.Y.S.2d 240 (1st Dept. 1958)………………… 15

Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc., 1989 U.S. Dist.
LEXIS 11588 (S.D.N.Y. 1989)…………………………………… 7

Kobre v. Instrument Systems Corp., 54 A.D.2d 625, 626,
387 N.Y.S.2d 617 (1st Dept. 1976), aff'd, 43 N.Y.2d 862,
374 N.E.2d 131, 403 N.Y.S.2d 220 (1978)………………………… 12, 13

Konigsberg Int'l, Inc. v. Rice, 16 F.3d 355 (9th Cir. 1994)……………… 5, 10

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1159 n.11,
131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)………………………….. 6

La Barca v. Altenkirch, 193 A.D.2d 586, 597 N.Y.S.2d 158 (2d Dep't 1993)…. 16

Lawrence v. Dixey, 119 A.D. 295, 104 N.Y.S. 516 (1st Dept. 1907)………… 18

Library Publications, Inc. v. Medical Economics Co., 548 F. Supp.
1231 (E.D. Pa. 1982), aff'd, 714 F.2d 123 (3rd Cir. 1983)………………… 5, 6

Lyrick Studios, Inc. v. Big Idea Prods., Inc., 420 F.3d 388, 392
(5th Cir. 2005), cert. denied, 126 S. Ct. 1653 (2006)…………………… 7

Margate Industries, Inc. v. Samincorp., Inc., 582 F. Supp. 611, 617

(S.D.N.Y. 1984)............................................................................. 12

Najjar v. Nat'l Kinney Corp., 96 A.D.2d 836, 465 N.Y.S.2d 590, 591
(2d Dep't 1983)............................................................................. 15

Neva, Inc. v. Christian Duplications Intern., Inc., 743 F. Supp. 1533, 1548
(M.D. Fla. 1990)............................................................................. 10

New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 315, 662 N.E.2d 763,
639 N.Y.S. 2d 283 (1995)................................................................ 19, 20

Pamfiloff v. Giant Records, Inc., 794 F. Supp. 933, 936 (N.D. Ca. 1992)........... 7, 10

Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154
(S.D.N.Y. 1996)............................................................................. 8, 10

Playboy Enterprises, Inc. v. Dumas, 831 F. Supp. 295, 308
(S.D.N.Y. 1993), aff'd in part and rev'd in part on other grounds,
53 F.3d 549 (2d Cir. 1995)................................................................ 7

PMC, Inc. v. Saban Entertainment, Inc., 45 Cal. App. 4th 579, 591
52 Cal. Rptr. 2d 877 (2d Dist. 1996).................................................... 6, 10

Radio Television Espanola S.A. v. New World Entertainment, Ltd.,
183 F.3d 922, 927 (9th Cir. 1999)....................................................... 9, 10

Rico Records Distributors, Inc. v. Ithier, 2006 U.S. Dist. LEXIS
14956 (S.D.N.Y. March 30, 2006)....................................................... 5, 7, 8

Rocanova v Equitable Life Assur. Socy., 83 N.Y.2d 603,
612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)............................................. 19

Rosen v. Hyundai Group (Korea), 829 F. Supp. 41, 49 (E.D.N.Y. 1993),
aff'd without op. sub nom., 22 F.3d 1091 (2d Cir. 1994)............................ 16

Saxon v. Blann, 968 F.2d 676, 680 (8th Cir. 1992).................................. 7

Scheck v. Francis, 26 N.Y.2d 466, 470, 311 N.Y.S.2d 841, 843,
260 N.E.2d 493 (1970)..................................................................... 12, 13

Shubert Theatrical Co. v. Rath, 271 F. 827, 832 (2d Cir. 1921)................... 17

Stephen Pevner, Inc. v. Ensler, 309 A.D.2d 722, 766 N.Y.S.2d 183
(1st Dep't 2003)............................................................................. 14, 15

Time, Inc. v. Kastner, 972 F. Supp. 236, 239 (S.D.N.Y. 1997)………………..   6

Walker v Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488,
179 N.E.2d 497 (1961)……………………………………………………………   19

Westchester Fire In. Co. v. Massamont Ins. Agency, Inc., 420 F. Supp. 2d
223, 227 (S.D.N.Y. 2005)…………………………………………………………..   19

Zaitsev v. Salomon Bros., 60 F.3d 1001, 1004 (2d Cir. 1995)…………………   14

Other Authorities:

17 U.S.C. § 204(a)………………………………………………………………   *passim*

N.Y. Gen. Oblig. Law § 5-701 (1978)…………………………………………..   *passim*

Calamari & Perillo, The Law of Contracts [2d ed], § 16-5)…………………   17

5A Corbin, Contracts, § 1204…………………………………………………..   17

E. Allan Farnsworth, Farnsworth on Contracts, § 6.2 (2d ed. 2001)………..   16

56 NY Jur. Statute of Frauds, § 165……………………………………………   13

4 Pomeroy, Equity Jurisprudence [5th ed], § 1343, at pp 943-944………….   17

Stevens, Involuntary Servitude by Injunction, 6 Corn LQ 235……………..   17

Willard, Equity Jurisprudence, at pp 276-279……………………………………   17

## PRELIMINARY STATEMENT

This action arises out of failed negotiations between Kensington Publishing Corp.,

("Kensington") a publisher, and Heather Armstrong ("Armstrong"), an author, over a

potential publishing relationship. Negotiations between the parties broke down in May

2006 without an agreement ever having been signed by Ms. Armstrong or even by

Kensington, the party that prepared the draft agreement. Kensington is now attempting to

achieve through litigation what it failed to obtain at the bargaining table. Kensington is

using this Court to try to force Ms. Armstrong to publish her work through Kensington,

against Ms. Armstrong's wishes and notwithstanding the absence of a signed agreement.

Ms. Armstrong is moving to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6)

on the grounds that Kensington's claims are barred by Section 204(a) of the Copyright

Act and the New York Statute of Frauds. Ms. Armstrong is also moving to dismiss the

Complaint to the extent it seeks (i) to require Ms. Armstrong to render personal services

to Kensington; and (ii) the recovery of punitive damages and Kensington's attorneys'

fees. For the Court's convenience, a copy of the Complaint is attached to the

accompanying Affidavit of David Atlas, sworn to September 1, 2006, as Exhibit A.

## FACTS

According to Kensington's Complaint, the parties began discussing a potential

publishing relationship between them in or about November 2005. Complaint at ¶ 10.

Kensington claims these discussions resulted in an oral agreement with Ms. Armstrong

"for a two-book deal," but the Complaint does not specify exactly what terms, if any, the

parties actually agreed to. Complaint at ¶ 10. Apparently recognizing that, whatever its

terms, the alleged oral agreement would be unenforceable as a publishing contract,

Kensington now recasts that "agreement" in its Complaint as an oral 'agreement to agree' or, as Kensington puts it, a "promise" unconditionally obligating Ms. Armstrong "to execute and abide by the terms" of a final publishing agreement. Complaint at ¶ 42.

Kensington next alleges that following the oral agreement, it engaged in lengthy negotiations with Ms. Armstrong's "representatives" over the terms of a written contract. Complaint at ¶ 12. In late April 2006, after five months of negotiations, Kensington sent to Ms. Armstrong and her literary agent an unsigned, 21 page version of a written agreement (the "April Draft Agreement"). Complaint at ¶¶ 13. The April Draft Agreement provided, among other things, that Ms. Armstrong's obligations to Kensington would run through 2008. It further provided that Ms. Armstrong would grant to Kensington "the exclusive rights in the Work during the terms of copyright and all renewals and extensions thereof . . . ." See Affidavit of Betsy Lerner, sworn to August 8, 2006 ("Lerner Aff."), Ex. A.

As Kensington concedes in its Complaint, a number of events over the course of the lengthy negotiating process caused Ms. Armstrong to believe that Kensington did not fully support or appreciate her or her work. Complaint at ¶¶ 17-18. Moreover, at around the same time that Kensington sent the April Draft Agreement to Ms. Armstrong's agent, Ms. Armstrong learned that the editor at Kensington who had originally solicited her, and who would have worked hand in hand with her had the parties consummated a deal, had left Kensington's employ. Complaint at ¶ 15.

These and other factors caused Ms. Armstrong to halt negotiations with Kensington. Complaint at ¶ 15. Approximately a month after receiving the April Draft

Agreement, Ms. Armstrong advised Kensington that she no longer wished to pursue a relationship with it and would not sign the agreement it had sent. Complaint at ¶¶ 16-18.

Kensington, which by its own account has been in business for more than 32 years and publishes 7% of all mass market paperback books in the United States, is clearly sophisticated in publishing matters. Complaint at ¶ 5. Its General Counsel, who negotiated and drafted the April Draft Agreement (Complaint at ¶ 13) is undoubtedly aware that the Copyright Act requires that the terms of a transfer of exclusive publishing rights be fully set forth in writing and signed by the author, and that the custom and practice in the publishing industry reflects, and is consonant with, this legal requirement.

Moreover, while it is now Kensington's litigation position that the April Draft Agreement was a final and binding agreement on both parties (Complaint at ¶ 23), Kensington never signed the version it sent to Ms. Armstrong's literary agent either and, in so doing, shrewdly made sure it had the final say as to whether or not to go forward with this relationship, regardless of whether Ms. Armstrong signed the document. See Lerner Aff., Ex. A. Further underscoring Kensington's awareness that no binding relationship would arise between the parties until there was a fully executed contract, Kensington never paid or tendered to Ms. Armstrong any of the advance monies which would have been due to her upon completion and signing of the agreement. See Lerner Aff. at ¶ 2. Thus, contrary to the allegations in its Complaint, Kensington has not complied with its most basic and important obligation under the "agreement" – namely, paying Ms. Armstrong to begin work on her manuscripts. Complaint at ¶ 25.[1]

---

[1]     The Court may consider the April Draft Agreement, as well as the fact that plaintiff never paid or tendered to Ms. Armstrong any portion of the advance pursuant to that document, without converting this motion into one for summary judgment. See

In its Complaint, plaintiff seeks a declaratory judgment that the April Draft Agreement is enforceable, as well as a court order requiring Ms. Armstrong to produce two lengthy works for Kensington and to transfer exclusive copyright rights in and to those works to Kensington. Complaint at ¶¶ 23-27. Kensington also asserts claims for breach of contract (alleging that Ms. Armstrong was obligated to sign the April Draft Agreement), for breach of the implied covenant of good faith and fair dealing (which, of course, is wholly dependent on whether there actually ever was a contract to begin with); and for promissory estoppel based on Ms. Armstrong's supposed promise to sign the April Draft Agreement. Complaint at ¶¶ 28-44. Ms. Armstrong now moves to dismiss the Complaint in its entirety.

## ARGUMENT

The allegations in plaintiff's Complaint fail as a matter of law to state any clam upon which relief can be granted. Even assuming that everything in the complaint is true, which Ms. Armstrong denies, plaintiff, at most, has alleged that the parties entered into an oral agreement – one that is not memorialized in any written and signed form -- for Ms. Armstrong to transfer the copyright in and to her work to Kensington. Such oral agreements are entirely unenforceable and barred both by Section 204(a) of the Copyright Act and by the New York Statute of Frauds. Accordingly, the Court should dismiss this action against Ms. Armstrong in its entirety.

---

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)("where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)(district court permitted to consider material outside the complaint on a motion to dismiss where plaintiff has notice of information and it is integral to plaintiff's claim).

I.

## THE COPYRIGHT ACT BARS PLAINTIFF'S CLAIMS

A.    Section 204(a) of the Copyright Act of 1976
      Bars Enforcement of the Alleged Oral Agreement

The federal Copyright Act invalidates any oral transfer of copyright ownership.

Section 204(a) of the Copyright Act of 1976 provides in relevant part:

> A transfer of copyright ownership, other than by operation
> of law, is not valid unless an instrument of conveyance, or
> a note or memorandum of the transfer, is in writing and
> signed by the owner of the rights conveyed or such owner's
> duly authorized agent.

17 U.S.C. § 204(a).  The writing requirement of Section 204(a) applies not only to

transfers of copyrights but also to exclusive license agreements.  See Rico Records

Distributors, Inc. v. Ithier, 2006 U.S. Dist. LEXIS 14956 at *6, n. 2 (S.D.N.Y. March 30,

2006); Library Publications, Inc. v. Medical Economics Co., 548 F. Supp. 1231, 1233

(E.D. Pa. 1982), aff'd, 714 F.2d 123 (3rd Cir. 1983).

Section 204(a)'s requirement, while sometimes called the copyright statute of

frauds, is in fact different from a statute of frauds.  See Konigsberg Int'l, Inc. v. Rice, 16

F.3d 355, 357 (9th Cir. 1994).  Rather than serving an evidentiary function and making

otherwise valid agreements unenforceable, under § 204(a) "a transfer of copyright is

simply 'not valid' without a writing." Id.

Section 204(a) is quite specific in its requirements to effectuate a valid copyright

transfer, and for good reason.  It is designed to prevent unscrupulous parties from doing

precisely what plaintiff is attempting to do here.  The writing requirement mandated by

section 204(a) serves to ensure that copyright ownership will not be given away

inadvertently, and forces parties who want to transfer copyright ownership to determine

precisely what rights are being transferred and at what price. See Effects Associates, Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990), cert denied, 498 U.S. 1103 (1991).  As the court explained in PMC, Inc. v. Saban Entertainment, Inc., 45 Cal. App. 4th 579, 591 52 Cal. Rptr. 2d 877 (2d Dist. 1996):

> The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do. The Copyright Act's writing requirements are intended to force parties to bargain carefully and to determine precisely what rights are being transferred, and at what price. To serve the purpose of the statute, the writing "at the very least, [must] be executed more or less contemporaneously with the agreement and must be a product of the parties' negotiations." **It must evidence an intent to transfer a copyright.**
>
> Unlike common law statutes of frauds  . . . section 204 of the Copyright Act serves more than an evidentiary function. **Without a writing, a transfer of copyright is not valid and the transfer is not effective.  Further, the writing requirements under section 204 are more stringent than the common law statute of frauds.** (citations omitted) (emphasis added).[2]

Courts routinely hold that Section 204 bars breach of contract claims based on oral agreements that violate that section.  See Time, Inc. v. Kastner, 972 F. Supp. 236, 239 (S.D.N.Y. 1997); Library Publications, 548 F. Supp. at 1233-34.  In this regard, the 'agreement to agree' that plaintiff alleges Ms. Armstrong entered into is no more enforceable than the oral publishing agreement itself.

---

[2]    PMC, Inc. v. Saban Entertainment, Inc., supra, was disapproved on other grounds in Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1159 n. 11, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003).

Time and again, where, as here, no instrument of conveyance exists, courts also have rejected one party's efforts to cobble together ambiguous notes, emails or correspondence in an effort to avoid the strictures of the Copyright Act, holding that the terms of a signed writing under 204(a) -- even a one-line *pro forma* statement -- must clearly evidence the transfer of a copyright. Indeed, at least two courts in this District have found that a writing that did not expressly use the word "copyright" failed to meet the requirements of Section 204(a). See Playboy Enterprises, Inc. v. Dumas, 831 F. Supp. 295, 308 (S.D.N.Y. 1993), aff'd in part and rev'd in part on other grounds, 53 F.3d 549 (2d Cir. 1995); Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc., 1989 U.S. Dist. LEXIS 11588 (S.D.N.Y. 1989).

Other courts have required a similar degree of specificity. See Lyrick Studios, Inc. v. Big Idea Prods., Inc., 420 F.3d 388, 392 (5th Cir. 2005), cert. denied, 126 S. Ct. 1653 (2006)(signed writing must "show an agreement to transfer copyright"); Bieg v. Hovnanian Enters., Inc., 157 F. Supp. 2d 475, 482-83 (E.D. Pa. 2001)(assignments of rights or interests that do not reference rights of reproduction are ambiguous and therefore invalid under 204(a)); Pamfiloff v. Giant Records, Inc., 794 F. Supp. 933, 936 (N.D. Ca. 1992) (granting motion to dismiss; signed writing that fails to specifically mention transfer of ownership rights does not satisfy the requirements of Section 204(a)); Saxon v. Blann, 968 F.2d 676, 680 (8th Cir. 1992)(to transfer ownership of a copyright, the parties must state in writing that they intend to transfer a copyright)

Recently, in Rico Records Distributors, Inc. v. Ithier, supra, this Court faced a question concerning the effectiveness of a copyright transfer where the plaintiff asserted rights over the copyrights to 35 sound recordings performed by the defendants. The

defendants sought summary judgment, claiming the oral transfers were invalid under Section 204(a). The Court noted that the signed writing required by Section 204(a) "must evidence the transfer with reasonable clarity." Id., 2006 U.S. Dist. LEXIS 14956 at *3 (emphasis added), citing Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1159 (S.D.N.Y. 1996) and Effects Associates, Inc. v. Cohen, 908 F2d. 555, 557 (9th Cir. 1990). As to certain of the recordings at issue, the Court found that checks accompanying the alleged transfers were signed by the defendants and contained language such as "Purchase of rights of EGC catalogue." The Court held that this language was sufficient to raise an issue of fact as to whether a transfer occurred with these recordings. As to other recordings, however, where there was no writing that memorialized "the transfer of copyrights," the Court held that summary judgment was appropriate.

In the instant case, Kensington does not allege anywhere in its Complaint that a signed, written instrument of conveyance exists -- and in fact none exists. Nor does Kensington allege that there is a written and signed note or memorandum evidencing a transfer of Ms. Armstrong's exclusive copyright rights in and to her work. Indeed, Kensington does not even allege in its Complaint that the parties ever actually discussed the transfer of Ms. Armstrong's exclusive copyright rights to her work.

The most that one can glean from plaintiff's Complaint is that the parties engaged in oral negotiations over a period of months that resulted in the preparation by Kensington of two different draft agreements at two different times (one in December 2005 and the April Draft Agreement in 2006), but that neither of these agreements was ever signed by either party. Complaint at ¶¶ 11, 13 and 15. Indeed, by withholding its own signature, Kensington – the party that prepared the April Draft Agreement – ensured

that it had the final say as to whether or not to go forward with the relationship. Kensington is thus hardly in a position to argue that Ms. Armstrong should be bound by a purported "agreement" to which even Kensington had not made a final commitment. Simply put, Kensington's allegations do not support the claims it is making against Ms. Armstrong.

Obviously recognizing the infirmity of its position, and in an apparent effort to make an end run around the Copyright Act, Kensington points to an email it allegedly received from "Armstrong's representative" stating

> The final revision of the above referenced contract looks good. Please send signature copies of the revised agreement to Betsy Lerner [Armstrong's literary agent] at Dunow Carlson & Lerner. Could you please e-mail a final clean copy to me for my file? Thanks so much, I can't believe we made it!"

Complaint at ¶ 13. This email, however, clearly fails to satisfy the requirements of Section 204(a). It is not an instrument of conveyance; it is not a note or memorandum evidencing the transfer of exclusive rights to Ms. Armstrong's copyright; and it is not signed by Ms. Armstrong. See Radio Television Espanola S.A. v. New World Entertainment, Ltd., 183 F.3d 922, 927 (9th Cir. 1999) ("A mere reference to a deal without any information about the deal itself fails to satisfy the simple requirements of §204(a)"). There also is no evidence, nor does Kensington allege, that this "representative" was duly authorized by Ms. Armstrong to agree to transfer her copyright rights. At any rate, the fact that this "representative" asked that signature copies of the agreement be forwarded to Betsy Lerner demonstrates not only the *absence* of such authorization on her part but, more important, the parties' intent that no binding obligations would arise as between them until they signed an agreement.

For the reasons set forth above, the Complaint fails to state a claim for breach of contract against Ms. Armstrong.

B.    Section 204(a) Also Bars Any Claims to Enforce an
      Oral License Based on Other Related Causes of Action

Kensington's claims for declaratory judgment, promissory estoppel and breach of the covenant of good faith and fair dealing are barred by Section 204(a) for the same reasons that its contract claim is barred.  See PMC, supra, 45 Cal.App.4th at 592 (Section 204(a) of the Copyright Act bars not only contract claims, but claims to enforce an oral license based on other related causes of action, including equitable claims such as estoppel); Pamfiloff, 794 F. Supp. at 936-937. "While [laches, estoppel and waiver] may be properly asserted in an infringement action, they are not properly asserted in [an] action to determine the ownership of the copyright." Neva, Inc. v. Christian Duplications Intern., Inc., 743 F. Supp. 1533, 1548 (M.D. Fla. 1990).

Courts have repeatedly rejected attempts to circumvent section 204(a) when parties, such as plaintiff herein, seek to enforce an invalid oral contract through the back door by asserting equitable claims. See, e.g., Radio TV Espanola S.A. v. New World Entertainment, Ltd., 183 F.3d 922, 925-26 (9th Cir. Cal. 1999)(affirming summary judgment on claims for breach of contract, unjust enrichment, and unfair competition because of failure to comply with section 204(a)); Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996)(dismissing claims for breach of contract, quasi-contract, restitution, declaratory judgment and tortious interference with contract because of failure to satisfy section 204(a)).  Otherwise, the paramount goal underlying section 204(a) of predictability and certainty of copyright ownership would be undermined. See Konigsberg Int'l, 16 F.3d at 358.  Thus, the writing requirements of the

Copyright Act defeat other causes of action that arise "out of the same facts that serve as the basis for the breach of contract claim." Papa's-June Music, Inc. v. McLean, 921 F. Supp. at 1162.

In the present case, it is clear from the face of the Complaint that Kensington's claim for a declaratory judgment, and its claims based on estoppel and the alleged breach of the covenant of good faith and fair dealing, are based entirely on the promises in the alleged oral agreement that is invalid under section 204(a). Accordingly, such claims are derivative of the invalid substantive claims, and are thus properly dismissed as well.

II.

THE NEW YORK STATUTE OF FRAUDS<br>BARS PLAINTIFF'S CLAIMS

Kensington's claims against Ms. Armstrong are also barred by the New York Statute of Frauds, Section 5-701 of the New York General Obligations Law, which provides in relevant part as follows:

> § 5-701. Agreements required to be in writing
>
> a.    Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
>> 1.    By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime . . . .

See N.Y. Gen. Oblig. Law § 5-701 (1978). The Statute forbids the imposition of a performance obligation on a defendant necessarily extending beyond one year, in the absence of a signed writing that sets forth all of the essential terms of the agreement imposing that performance obligation. See, e.g., Ginsberg Machine Co. v. J&H Label

Processing Corp., 341 F.2d 825, 827 (2d Cir. 1965); Kobre v. Instrument Systems Corp.,
54 A.D.2d 625, 626, 387 N.Y.S.2d 617, 618-19 (1st Dept. 1976), aff'd, 43 N.Y.2d 862,
374 N.E.2d 131, 403 N.Y.S.2d 220 (1978).

The publishing agreement alleged here by plaintiff falls within the Statute of
Frauds since, by its terms, it contemplates that Ms. Armstrong will produce two works
for Kensington, with the second work scheduled for final delivery and payment no earlier
than February 2008. Kensington's Complaint further acknowledges, as it must, that the
parties never signed the April Draft Agreement or any other formal publishing
agreement.

It is well settled that where a formal written contract is not reached, enforcement
will be denied if it is found that the parties intended to be bound only upon execution of a
formal document. See Margate Industries, Inc. v. Samincorp., Inc., 582 F. Supp. 611,
617 (S.D.N.Y. 1984); Scheck v. Francis, 26 N.Y.2d 466, 470, 311 N.Y.S.2d 841, 843,
260 N.E.2d 493 (1970).

The court's decision in Scheck is particularly instructive. In that case, the
plaintiff, the manager of a singer, entered into negotiations for a new contract of
employment with the singer and her corporations. The plaintiff signed proposed
agreements mailed to him by the defendants' attorney, which were accompanied by a
letter stating that the singer also needed to sign. The singer did not sign the agreements.
When the plaintiff's employment was terminated, he sued for breach of contract. The trial
court denied the defendants' motion to dismiss the complaint. The appellate court
reversed. The Court of Appeals affirmed the order of the appellate court, holding that the
alleged contract did not satisfy the statute of frauds because it was not signed by all

parties. Of particular significance to the Court of Appeals was the fact that the cover letter enclosing the agreements requested the signature of both parties. The court found this to be clear evidence that that agreement was to take effect only after both parties signed. See Scheck, 26 N.Y.2d at 470-71.

The Court should make such a finding here based not only on the requirements of the Copyright Act and industry practice, but also from the reference in Kensington's Complaint to the email which states "please send signature copies of the revised agreement to Betsy Lerner [Armstrong's literary agent] at Dunow Carlson & Lerner" and the absence of any payment from Kensington to Ms. Armstrong. As in Scheck, supra, the facts here unquestionably demonstrate that Kensington understood that no binding agreement would arise without Ms. Armstrong's signature. Further, by not signing the draft agreement it sent to Ms. Lerner, Kensington reserved the ability to decline to go through with the deal. Certainly, Ms. Armstrong enjoyed the same privilege. In short, both parties here plainly understood that the agreement was to take effect only after they had signed it and, until that time, the matter was still in the stage of negotiations.

Nevertheless, if the Court declines to make such a finding, the issue becomes whether there exists a signed note or memorandum of the agreement that meets the requirements of the Statute of Frauds. Kensington refers to only one such note in its Complaint – namely, the email – and this document plainly fails to satisfy the Statute.

It is hornbook law that the note or memorandum of the agreement, in order to satisfy the Statute of Frauds, "must state the entire contract with reasonable definiteness and certainty, so that the substance thereof will appear from the writing without any resort to parol evidence." See 56 NY Jur. Statute of Frauds, § 165; Kobre, 54 A.D.2d at

626. The memorandum must be such that when it is produced in evidence it will inform the court or jury of the essential facts set forth in the pleading, and which go to make a valid contract. See Zaitsev v. Salomon Bros., 60 F.3d 1001, 1004 (2d Cir. 1995)(to satisfy the Statute of Frauds, the writings must completely evidence the contract which the parties made); Armored Motor Service, Inc. v. First Federal Sav. & Loan Asso., 138 A.D.2d 954, 526 N.Y.S.2d 287 (4th Dep't 1988)(proffered memoranda failed to satisfy Statute of Frauds because it "did not contain essential terms of the agreement, particularly its duration and the provision for termination. Those terms may not be supplied by parol evidence"); Dorman v. Cohen, 66 A.D.2d 411, 414, 413 N.Y.S.2d 377 (1st Dep't 1979).

The email that Kensington refers to in its Complaint meets none of these standards. Most obvious, of course, is that it contains none of the essential terms of the parties' alleged publishing agreement. While the email does refer to a revision of the contract as "looking good," this is at best an ambiguous offhand remark that does not signify Ms. Armstrong's intent to actually be bound by any agreement or that the terms of such agreement were fully and finally acceptable to Ms. Armstrong. Indeed, as noted above, the reference to "signature copies" – and the fact that Kensington never paid any advance monies to Ms. Armstrong -- underscores the parties' mutual understanding that no binding obligations would arise unless and until an agreement was actually signed.

The New York Appellate Division, First Department recently considered similar issues in Stephen Pevner, Inc. v. Ensler, 309 A.D.2d 722, 766 N.Y.S.2d 183 (1st Dep't 2003). In Pevner, the issue was the enforceability of an alleged agreement for the plaintiff to act as literary agent of the defendant for the exploitation of her work. The court held that any claim by the plaintiff of a breach of an oral contract was properly

dismissed as barred by the Statute of Frauds. The court further held that the collective writings to which the plaintiff pointed seeking to make out a written agreement sufficient to satisfy the statute of frauds were insufficient since they relied almost entirely upon the unexecuted agreements prepared by the plaintiff. As in Pevner, plaintiff here points to nothing in its Complaint other than an ambiguous and inconclusive email and the unsigned version of the April Draft Agreement that it prepared and sent to Ms. Armstrong. Pevner makes clear that this is not enough to satisfy the Statue of Frauds.

Plaintiff's reliance upon the email is misplaced for the additional reason that Kensington does not allege, and there is no evidence, that the "representative" who allegedly sent this email had the capacity to act as Ms. Armstrong's agent or the authority to bind Ms. Armstrong to a relationship with Kensington. See In re Estate of Perera, 3 Misc. 2d 1043, 1046, 155 N.Y.S.2d 894 (1956), aff'd 5 A.D.2d 972, 173 N.Y.S.2d 240 (1st Dept. 1958)(letter of attorney enclosing a proposed agreement and stating that such agreement was drawn at decedent's request, was not a writing signed by the deceased's agent having authority to impose liability upon deceased).

Finally, as is true under the Copyright Act, an agreement to agree under the circumstances here is unenforceable under the New York Statute of Frauds. "The law is well settled that an oral agreement to execute an agreement that is within the statute of frauds is itself within the statute, and unenforceable." Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339, 343 (2d Cir.), cert denied, 375 U.S. 879 (1963). See also Najjar v. Nat'l Kinney Corp., 96 A.D.2d 836, 465 N.Y.S.2d 590, 591 (2d Dep't 1983) (holding that the statute of frauds "may not be evaded by claiming that even though the agreement for the transfer of the property itself is unenforceable, the agreement to

enter this business arrangement is valid"); E. Allan Farnsworth, Farnsworth on Contracts, § 6.2 (2d ed. 2001) ("The statute of frauds may also apply to a promise to sign a writing. If an agreement is within the statute, a promise to sign a writing evidencing the agreement is also within the statute."); La Barca v. Altenkirch, 193 A.D.2d 586, 597 N.Y.S.2d 158 (2d Dep't 1993)(agreement to agree is unenforceable under the Statute of Frauds).

For the reasons set forth above, the Court cannot sustain plaintiff's claims for breach of contract and a declaratory judgment because the alleged contract violates the New York Statute of Frauds. For the same reasons, the Court should dismiss plaintiff's claims for promissory estoppel and for breach of the covenant of good faith and fair dealing. See Rosen v. Hyundai Group (Korea), 829 F. Supp. 41, 49 (E.D.N.Y. 1993), aff'd without op. sub nom., 22 F.3d 1091 (2d Cir. 1994)(the Statute of Frauds is a proper defense to a claim of promissory estoppel as long as its application is not unconscionable); Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 103 (S.D.N.Y. 1997)(a duty to act in good faith cannot arise absent an enforceable agreement).

III.

PLAINTIFF IS NOT ENTITLED<br>TO SPECIFIC PERFORMANCE

Kensington is seeking to force Ms. Armstrong to render writing services to Kensington. (Complaint, Prayer for Relief, ¶ 2). The courts of this State long ago made clear that specific performance is unavailable as a remedy in contracts for personal services. Accordingly, the Court may not grant the relief Kensington is seeking and its claims in this regard should be dismissed.

The New York Court of Appeals explained this longstanding principle best in

American Broadcasting Cos. v. Wolf, 52 N.Y.2d 394, 401-02, 438 N.Y.S.2d 482, 420

N.E.2d 363 (1981):

> Courts of equity historically have refused to order an
> individual to perform a contract for personal services (e.g.,
> 4 Pomeroy, Equity Jurisprudence [5th ed], § 1343, at pp
> 943-944; 5A Corbin, Contracts, § 1204; see Haight v
> Badgeley, 15 Barb 499; Willard, Equity Jurisprudence, at
> pp 276-279). Originally this rule evolved because of the
> inherent difficulties courts would encounter in supervising
> the performance of uniquely personal efforts n4 (e.g., 4
> Pomeroy, Equity Jurisprudence, § 1343; 5A Corbin,
> Contracts, § 1204; see, also, De Rivafinoli v Corsetti, 4
> Paige Ch 264, 270). During the Civil War era, there
> emerged a more compelling reason for not directing the
> performance of personal services: the Thirteenth
> Amendment's prohibition of involuntary servitude. It has
> been strongly suggested that judicial compulsion of
> services would violate the express command of that
> amendment n5 (Arthur v Oakes, 63 F 310, 317; Stevens,
> Involuntary Servitude by Injunction, 6 Corn LQ 235;
> Calamari & Perillo, The Law of Contracts [2d ed], § 16-5).
> For practical, policy and constitutional reasons, therefore,
> courts continue to decline to affirmatively enforce
> employment contracts.

As is evident from other cases that have addressed this issue, the principle set

forth in Wolf has long guided decisions in both the state and federal courts of New York.

See Arias v. Solis, 754 F. Supp. 290, 293-94 (E.D.N.Y. 1991)("Under New York law, it

is well settled that as a general rule a court of equity will not specifically enforce a

contract for personal services"); Goldsmith v. Pyramid Communications, Inc., 362 F.

Supp. 694 (S.D.N.Y. 1973); Bethlehem Engineering Export Corp. v. Christie, 26 F. Supp.

121, 122 (D.N.Y. 1939) aff'd, 105 F.2d 933 (2d Cir. 1939)("A court of equity will not

directly enforce a contract to render personal services by a decree for specific

performance); Shubert Theatrical Co. v. Rath, 271 F. 827, 832 (2d Cir. 1921)("Courts of

equity do not exercise their jurisdiction to grant the remedy of an affirmative specific

performance of a contract for personal services"); Creator's Way Associated Labels, Inc.

v. Mitchell (In re Mitchell), 249 B.R. 55, 59 (S.D.N.Y. Bankr. 2000)("under New York

law, a court will not compel the specific performance of a personal service contract);

Lawrence v. Dixey, 119 A.D. 295, 104 N.Y.S. 516 (1st Dept. 1907)("It is elementary that

contracts for personal service cannot be specifically enforced by a court of equity").

Accordingly, the Court should dismiss plaintiff's Complaint to the extent it is

seeking specific performance of any alleged obligation on the part of Ms. Armstrong to

render personal services to Kensington.

IV.

PLAINTIFF IS NOT ENTITLED TO ITS ATTORNEYS' FEES

As the court explained in Frater v. Tigerpack Capital, 1998 U.S. Dist. LEXIS

19128 at *4 (S.D.N.Y. Dec. 8, 1998):

> New York courts adhere to the so-called "American rule"
> regarding indemnification for attorneys' fees which
> provides that each party to a dispute is responsible for its
> own attorneys' fees regardless of the outcome of the
> litigation. See, e.g., Chapel v. Mitchell, 84 N.Y.2d 345, 618
> N.Y.S.2d 626, 642 N.E.2d 1082 (1994). Under New York
> law, a party seeking relief for attorneys' fees must have
> entered into a contract that expressly provides for the
> recovery of such fees. See, e.g., Hirschfeld v. I.C.
> Securities, Inc., 132 A.D.2d 332, 521 N.Y.S.2d 436 (1st
> Dep't 1987). New York courts will not infer an agreement
> to indemnify a party for attorneys' fees incurred in litigation
> between contracting parties unless the intention to do so is
> "unmistakably clear" in the language of the contract. See
> Hooper Assocs. v. AGS Computers, Inc., 74 N.Y.2d 487,
> 491-92, 548 N.E.2d 903, 549 N.Y.S.2d 365 (1989).

See also Westchester Fire In. Co. v. Massamont Ins. Agency, Inc., 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005)("Under the "American Rule" a prevailing party is ordinarily not entitled to attorneys' fees except where expressly provided by statute or contract).

Kensington has not alleged any statute or contractual provision between the parties, nor is there one, that would entitle Kensington to recover its attorneys' fees in this action. Accordingly, the Court should dismiss plaintiff's Complaint in this regard.

V.

PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

The law is clear that punitive damages are not ordinarily available as a remedy for breach of contract. Forrest v. Unifund Fin. Group, 2005 U.S. Dist. LEXIS 9028 (S.D.N.Y. May 12, 2005), citing New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 315, 662 N.E.2d 763, 639 N.Y.S. 2d 283 (1995).

In Rocanova v Equitable Life Assur. Socy., 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994), the New York Court of Appeals reiterated the principle that damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong because punitive damages serve to vindicate *a public right*. Id., at 613. See also Garrity v Lyle Stuart, Inc., 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). The court in Rocanova made clear that punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as "gross" and "morally reprehensible," and of "'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" Rocanova, 83 N.Y.2d at 614, quoting, Walker v Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961).

Court have explained that punitive damages claims are permissible in connection with breaches of contract only under the following circumstances: "(1) defendant's conduct must be actionable as an independent tort, (2) the tortious conduct must be . . . [egregious], (3) the egregious conduct must be directed to plaintiff, and (4) it must be part of a pattern directed at the public generally." New York Univ. at 316.  Plaintiff here meets none of these criteria.

If anything, this is, at most, a run-of-the-mill breach of contract case.  There is certainly no egregious conduct here and absolutely no pattern of conduct directed at the public generally.  The law is clear that under these circumstances, plaintiff is not entitled to punitive damages.  Its complaint in this regard should be dismissed.

## CONCLUSION

For the reasons set forth above, defendant respectfully requests that the Court dismiss this action in its entirety.

Dated: New York, New York
      September 1, 2006

SMITH DORNAN & DEHN PC

By: _____
      David Atlas (DA-0317)
110 East 42nd Street, Suite 1303
New York, New York 10017
212-370-5316
Counsel for Defendant

20

<u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK          )
                                                      : ss.:
COUNTY OF NEW YORK   )

        DAVID ATLAS, being duly sworn, hereby deposes and says:

        I am not a party to the action, am over 18 years of age and reside in the State of New York, County of Nassau.

        On September 5, 2006, I served a true copy of the annexed MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT by mailing the same in a sealed envelope, with first-class postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed as follows:

        Patrick T. Perkins, Esq.
        1711 Route 9D
        Cold Spring, New York 10516

                            DAVID ATLAS

Sworn to before me this
5th day of September 2006

        Notary Public

BARBARA A. McCORMICK
Notary Public - State of New York
No. 02MC6128717
Qualified in New York County
My Comm. Expires Jun. 13, 2009